**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : : : | Civil Action No.: 16-712 |
| | : | Judge Graham |
| Plaintiff, | : : | Magistrate Judge Deavers |
| v. | : : | |
| REDBUBBLE, INC., et al., | : : | |
| Defendants. | : : | |

---

**PLAINTIFF'S OPPOSITION TO REDBUBBLE INC.'S MOTION TO
DISMISS FOR LACK OF JURISDICTION, OR, IN THE ALTERNATIVE,
TO DISMISS PLAINTIFF'S CLAIMS UNDER FRCP 12(B)(6)**

---

Keith Shumate  (0056190)
Heather Stutz  (0078111)
Squire Patton Boggs (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
614.365.2700
keith.shumate@squirepb.com
heather.stutz@squirepb.com

Kevin C. Parks (Admitted *Pro Hac Vice*)
Michelle L. Zimmermann (Admitted *Pro Hac Vice*)
Stella Brown (Admitted *Pro Hac Vice*)
Leydig, Voit & Mayer, Ltd.
180 North Stetson
Two Prudential Plaza, Suite 4900
Chicago, Illinois
312.616.5669
kparks@leydig.com

*Attorneys for Plaintiff*
VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC.

# TABLE OF CONTENTS AND SUMMARY

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................. 2

III.   LAW AND ARGUMENT ................................................................................. 4

       A.     The Court Has Personal Jurisdiction Over Redbubble ......................... 4

              1.     Redbubble Purposefully Availed Itself Of The Privilege Of Acting
                     In Ohio ..................................................................................... 5

The "purposeful availment" requirement is satisfied here because Redbubble has created a "substantial connection" with Ohio through its fully interactive, commercial website that generates millions of dollars in revenue from sales to Ohio residents.

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002); *513 Ventures, LLC v. PIV Enter.*, 2012 U.S. Dist. LEXIS 39775 (S.D. Ohio Mar. 23, 2012); *Zoya Co. v. Julep Nail Parlor Co.*, 2011 U.S. Dist. LEXIS 136857 (N.D. Ohio Nov. 29, 2011); *Imperial Prods. v. Rice Endura Prods.*, 109 F. Supp. 2d 809 (S.D. Ohio 2000)

              2.     Plaintiff's Claims Arise From Redbubble's Ohio-Related Activities........ 9

The "arising from" requirement is a "lenient standard" that is satisfied here because Victoria's Secret's claims are "related to" Redbubble's extensive contacts with Ohio. Those contacts include millions of dollars in revenue from sales in Ohio and Redbubble's admitted sale of infringing products in Ohio. In addition, the injury from Redbubble's conduct is being inflicted in Ohio.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007); *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002); *Zoya Co. v. Julep Nail Parlor Co.*, 2011 U.S. Dist. LEXIS 136857 (N.D. Ohio Nov. 29, 2011); *V Secret Catalogue, Inc. v. Zdrok*, 2003 U.S. Dist. LEXIS 16159 (S.D. Ohio Aug. 28, 2003)

              3.     Exercising Jurisdiction Over Redbubble Is Reasonable .......................... 12

Because the first two requirements for specific jurisdiction are satisfied, Redbubble has the burden to establish a "compelling case" that exercising jurisdiction would be unreasonable. Redbubble has failed to meet that burden and cannot meet that burden in light of its extensive contacts with Ohio. Ohio's interest in this lawsuit outweighs the interests of any other forum, and Redbubble does not even argue that litigation in Ohio would be burdensome.

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002); *Slate Rock Constr., Co. v. Admiral Ins. Co.*, 2011 U.S. Dist. LEXIS 97122 (S.D. Ohio 2011); *Imperial Prods. v. Rice Endura Prods.*, 109 F. Supp. 2d 809 (S.D. Ohio 2000); *Zoya Co. v. Julep Nail Parlor Co.*, 2011 U.S. Dist. LEXIS 136857 (N.D. Ohio Nov. 29, 2011)

B.     The Complaint States Claims in Seven Well-Pleaded Counts............................ 15

    1.     Count I: Infringement of Registered Trademarks ..................................... 15

Count I is a textbook claim for direct infringement under 15 U.S.C. § 1114(a). The Complaint includes specific allegations as to Victoria's Secret's trademark ownership and Redbubble's unauthorized use of those marks in connection with the sale, offering for sale, distribution, or advertising of goods, and likelihood of confusion. These allegations must be accepted as true for purposes of a motion to dismiss.

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275 (6th Cir. 1997); *The Ohio State University v. Skreened, Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014)

    2.     Count II: Secondary Liability for Infringement ....................................... 17

Count II sets forth a clear claim for secondary infringement by alleging that Redbubble has knowledge of and directly controls the infringing acts of the John Doe defendants. These allegations must also be accepted as true at this stage of the proceedings.

*Habeeba's Dance of the Arts, Ltd. v Knoblauch*, 430 F.Supp.2d 709 (S.D. Ohio 2006); Thomas McCarthy, McCarthy on Trademarks and Unfair Competition 25:17 (Vol. 4, 2013)

    3.     Count III: Counterfeiting ........................................................................ 19

The Complaint identifies numerous counterfeit products and alleges that Redbubble's actions in manufacturing and selling such items are willful and knowing. These allegations state a prima facie case of counterfeiting under 15 U.S.C. § 1116.

    4.     Count IV: Federal Unfair Competition .................................................... 20

The elements for an unfair competition claim under the Lanham Act are essentially the same as the elements for infringement, without the requirement that the plaintiff's mark be registered. As such, for the reasons addressed above with respect to Count I, and in light of the explicit allegations of unlawful activity under the Lanham Act, Plaintiff has stated a valid claim for federal unfair competition.

*Audi AG & Volkswagen of America, Inc. v. D'Amato*, 469 F.3d 534 (6th Cir. 2006)

5.      Count V: Dilution ................................................................................... 21

The Complaint states a valid claim for dilution by alleging that Victoria's Secret's registered trademark is distinctive and famous and that Redbubble's actions are likely to cause dilution of that mark by blurring and/or tarnishment. Redbubble's arguments on the merits of the claim are premature.

*Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F.Supp.2d 942 (S.D. Ohio March 24, 2003)

6.      Counts VI and VII for State Law Claims................................................. 21

Victoria's Secret's state law claims are subject to the same pleading standards as the federal claims discussed above. As such, the state law claims are properly pled. Redbubble's attempt to raise an affirmative defense under the Communications Decency Act is premature and raises issues for the merits of the case.

*The Ohio State University v. Skreened, Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014); *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704 (S.D. Ohio 2012)

IV.    CONCLUSION............................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*513 Ventures, LLC v. PIV Enter.*,
    2012 U.S. Dist. LEXIS 39775 (S.D. Ohio Mar. 23, 2012) ......................................................6

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
    503 F.3d 544 (6th Cir. 2007) ............................................................................................9, 10

*Apex Tool Group, LLC v. DMTCO, LLC*,
    2014 U.S. Dist. LEXIS 158032 (S.D. Ohio Nov. 7, 2014).....................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................15, 22

*Audi AG & Volkswagen of America, Inc. v. D'Amato ("Audi AG")*,
    469 F.3d 534 (6th Cir. 2006) ...........................................................................................20

*Banyan Licensing, Inc. v. Orthosupport Int'l, Inc.*,
    2002 U.S. Dist. LEXIS 17341 (N.D. Ohio Aug. 15, 2002) .........................................4, 11, 14

*Beaver County Retirement Board v. LCA – Vision Inc.*,
    No. 1:07-cv-750, 2009 WL 806714 (S.D. Ohio, March 25, 2009)..........................................4

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) .............................................................................5-7, 9, 10, 13

*Burns v. U.S.*,
    542 Fed.Appx. 461 (6th Cir., Oct. 25, 2013) ........................................................................4

*Cadle Co. v. Schlichtmann*,
    123 Fed. App'x 675 (6th Cir. 2005) ....................................................................................6

*CompuServe, Inc. v. Patterson*,
    89 F.3d 1257 (6th Cir. 1996) ...................................................................................9, 13, 14

*Dean v. Motel 6 Operating L.P.*,
    134 F.3d 1269 (6th Cir. 1998) ...........................................................................................5

*Foreign Candy Co. v. Tropical Paradise, Inc.*,
    950 F. Supp. 2d 1017 (N.D. Iowa 2013).............................................................................7

*Habeeba's Dance of the Arts, Ltd. v Knoblauch*,
    430 F.Supp.2d 709 (S.D. Ohio 2006) .................................................................................18

*Harris v. Lloyds TSB Bank, PLC,*
281 Fed. App'x 489 (6th Cir. 2008) ................................................................5, 12

*Imperial Prods. v. Rice Endura Prods.,*
109 F. Supp. 2d 809 (S.D. Ohio 2000) ....................................................8-9, 13-14

*Levi Strauss & Co. v. Shilon,*
121 F.3d 1309 (9th Cir. 1997) .............................................................................11

*Monster Energy Co. v. Chen Wensheng,*
136 F. Supp. 3d 897, 908 (N.D. Ill. 2015) .................................................... 7-8, 11

*Moseley v. V Secret Catalogue, Inc.,*
537 U.S. 418 (2003)..............................................................................................21

*Neogen Corp. v. Neo Gen Screening, Inc.,*
282 F.3d 883 (6th Cir. 2002) ...........................................................................8, 10

*The Ohio State University v. Skreened, Ltd.,*
16 F. Supp. 3d 905 (S.D. Ohio 2014) ...............................................3, 15, 17, 22

*Reed Elsevier, Inc. v. TheLaw.net Corp.,*
269 F.Supp.2d 942 (S.D. Ohio March 24, 2003)...................................................21

*Reilly v. Meffe,*
6 F.Supp.3d 760, 769, 778 (S.D. Ohio 2014) ...................................................4, 15

*Slate Rock Constr., Co. v. Admiral Ins. Co.,*
2011 U.S. Dist. LEXIS 97122 (S.D. Ohio Aug. 30, 2011)...............................12, 13

*Tovey v. Nike, Inc.,*
2012 WL 7017821 (N.D. Ohio July 3, 2012) .......................................................19

*uBID, Inc. v. GoDaddy Group, Inc.,*
623 F.3d 421 (7th Cir. 2010) .........................................................................7, 12

*V Secret Catalogue, Inc. v. Zdrok,*
2003 U.S. Dist. LEXIS 16159 (S.D. Ohio Aug. 28, 2003)...................................10

*Victoria's Secret Stores v. Artco Equip. Co.,*
194 F. Supp. 2d 704 (S.D. Ohio 2002) .................................................................21

*Vollmer, et al., v. Amazon.com, Inc., et al.,*
S.D. Ohio Case No. 2:16-cv-00370 .......................................................................9

*Weather Underground, Inc. v. Navigation Cataylst Sys.,*
688 F. Supp. 2d 693 ( E.D. Mich. 2009)...............................................................12

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997) .......................................................................6

*Zoya Co. v. Julep Nail Parlor Co.*,
   2011 U.S. Dist. LEXIS 136857 (N.D. Ohio Nov. 29, 2011) ....................................7, 9, 10, 13

*Zoya Co. v. Nios, Inc.*,
   2013 U.S. Dist. LEXIS 120255 (N.D. Ohio Aug. 26, 2013) .....................................14

**Statutes**

15 U.S.C. § 1114 .....................................................................................................11, 16, 17

15 U.S.C. § 1116 .....................................................................................................19

15 U.S.C. § 1125 .....................................................................................................20-21

47 U.S.C. § 230 .......................................................................................................22

**Other Authorities**

Federal Rule of Civil Procedure 8 ..........................................................................2, 15

Federal Rule of Civil Procedure 12 ........................................................................2, 3, 15, 21, 22

## I.     INTRODUCTION

Defendant Redbubble developed, operates and controls all aspects of redbubble.com, an interactive e-commerce website that functions as an unbridled trademark infringement and counterfeiting machine.  Twenty-four hours a day, seven days a week, Redbubble offers, sells, manufactures and delivers "print-on-demand" products emblazoned with bogus imitations of famous brands owned by Plaintiff Victoria's Secret and others.  Below is a small sampling of infringing and counterfeit products currently available at redbubble.com, bearing Plaintiff's PINK and LOVE PINK trademarks, as well as Nike's famous JUST DO IT. mark, Coca-Cola's signature DIET COKE brand, and the familiar STARBUCKS and UNDER ARMOUR logos:[1]



PINK
Phone Case

LOVE PINK
Phone Case

JUST DO IT
Phone Case

DIET COKE
Phone Case

---

[1] *See,* Federal Trademark Registration Nos. 4,861,930 and 4,874,382 (PINK and LOVE PINK), 4,704,671 (JUST DO IT.), 3,820,750 (DIET COKE), 2,028,943 (STARBUCKS) and 2,509,632 (UNDER ARMOUR).  The products may be purchased from Redbubble here: http://www.redbubble.com/people/marynesrala/works/11427438-i-love-pink?grid_pos=172&p=iphone-case; http://www.redbubble.com/people/mildart/works/22387093-love-pink?p=iphone-case&rel=carousel; http://www.redbubble.com/people/maccadzn/works/21956633-just-do-it?grid_pos=24&p=iphone-case; http://www.redbubble.com/people/teedesiigner/works/22947751-diet-coke?p=samsung-galaxy-case&rel=carousel; http://www.redbubble.com/people/mesmericskyline/works/23007082-starbucks?grid_pos=1&p=t-shirt; http://www.redbubble.com/people/oscarday/works/23087363-under-armour-merchandise?grid_pos=31&p=t-shirt.


STARBUCKS
T-Shirt


UNDER ARMOUR
T-Shirt

Victoria's Secret has confronted Redbubble with its unlawful acts in a detailed, seven-count Verified Complaint. Through its present motion under Rules 12(b)(2) and 12(b)(6), Redbubble attempts to escape by challenging personal jurisdiction, and arguing, based in large part on inadmissible declaration testimony, that the Complaint fails to state a claim. These tactics are nothing more than an expensive diversion for the parties and this Court. As demonstrated below, Plaintiff's claims arise from Redbubble's substantial and ongoing activities in Ohio, which make personal jurisdiction reasonable and appropriate. In addition, the Verified Complaint puts Redbubble on clear and detailed notice of Victoria's Secret's claims, far exceeding the "short and plain statement of the claim[s]" required by Federal Rule of Civil Procedure 8(a)(2). The motion to dismiss should be denied in all respects.

## II. FACTUAL BACKGROUND

Victoria's Secret ("Plaintiff" or "VS") filed this suit on July 21, 2016, alleging that Redbubble is committing various infringing acts by promoting, selling, manufacturing and shipping products bearing reproductions of Plaintiff's famous VICTORIA'S SECRET trademark, and its well-known family of PINK trademarks, including LOVE PINK. (*See* Complaint ¶¶ 8-11, 22-30 and Exhibits C and D thereto, illustrating infringing and counterfeit products sold by Redbubble). Individual users upload designs to Redbubble's website, from which customers then purchase items bearing the designs. (Complaint ¶ 23). All products purchased from the website are manufactured and shipped to customers by, through, or on instructions from Redbubble. (Complaint ¶ 28).

As detailed in the Complaint, Redbubble's "print-on-demand" business model is legally the same as the one adjudicated to be infringing as a matter of law in *The Ohio State University v. Skreened, Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014). And in its present motion to dismiss, Redbubble attempts to advance the same failed arguments—blaming its users for the infringements, arguing that it is not "currently technically capable" of screening infringing designs, and denying that it can be held accountable because of the "automated" functions of its website. (ECF Doc. 18 at 3-4, 13; *compare*, *Skreened*, 16 F. Supp. 3d at 916-19.).

Redbubble's arguments not only fly in the face of Judge Frost's recent decision in *Skreened*, they are also based, improperly, on material outside the Complaint. Redbubble's motion brief cites liberally to the lengthy Declaration of its General Counsel, Corina Davis. (ECF Doc. 18-1, hereafter "Davis Dec."). Ostensibly submitted in support of Redbubble's 12(b)(2) application, the Davis Declaration is a thinly disguised effort to establish facts directly contrary to the well-pleaded allegations in the Complaint, which must be accepted as true pursuant to a 12(b)(6) motion. Ms. Davis offers a wide range of self-serving testimony and documents, which Redbubble cites as authority to argue, among other things, that "Redbubble is not a seller of goods," and "does not manufacture or deliver" the allegedly infringing products. (ECF Doc. 18 at 2-4). Again relying on the Declaration, Redbubble goes so far as to argue that it is impossible for it to infringe, because its "agreements and policies prohibit users from selling infringing products." (ECF Doc. 18 at 4). Needless to say, Redbubble's assertions will be fully explored as this litigation progresses, but for now the allegations in VS's Complaint must be accepted as true.

Redbubble's inclusion of facts not found in the Complaint is inappropriate in the context of a 12(b)(6) motion, and such tactics are inconsistent with the Federal Rules of Civil Procedure.

Under these circumstances, the Davis Declaration and attached Exhibits A-D should be stricken or ignored.  *See Reilly v. Meffe*, 6 F. Supp. 3d 760, 769, 778 (S.D. Ohio 2014).[2]

As detailed in Section III B below, Victoria's Secret's Complaint is a model Lanham Act pleading.  When Plaintiff's well-pleaded allegations are accepted as true, as they must be on the present motion, it is clear that the Complaint states seven separate, viable claims against Redbubble.  But first, in Section III A, Plaintiff establishes that the Court has personal jurisdiction over Redbubble.

## III.  LAW AND ARGUMENT

### A.    The Court Has Personal Jurisdiction Over Redbubble.

Redbubble asserts that exercising jurisdiction over it in this case would exceed the limits of due process.[3]  However, Redbubble conducts extensive, ongoing business in Ohio that results in millions of dollars in revenue and easily satisfies the requirements for personal jurisdiction.  Redbubble also admits that it sold the infringing products into Ohio, and "the law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant."  *Banyan Licensing, Inc. v. Orthosupport Int'l, Inc.*, 2002 U.S. Dist. LEXIS 17341, *9 (N.D. Ohio Aug. 15, 2002) (citation omitted).

---

[2] Redbubble does not suggest that the Davis Declaration Exhibits should be incorporated by reference or considered under the doctrine of judicial notice, nor could it. The documents – which include purported contracts, policy statements and corporate guidelines – are not incorporated into the Complaint, nor are they central or integral to VS's claims.  *See Burns v. U.S.*, 542 Fed.Appx. 461, 466 (6th Cir., Oct. 25, 2013).  Further, the facts contained within the documents may not be considered under judicial notice, as the accuracy and purported collective purposes of the documents can reasonably be questioned.  *Beaver County Retirement Board v. LCA – Vision Inc.*, No. 1:07-cv-750, 2009 WL 806714, at *6 (S.D. Ohio, March 25,, 2009) (citing *Passa v. City of Columbus*, 123 Fed.Appx. 694, 697 (6th Cir., Mar. 25, 2009)); *see Burns*, 542 Fed.Appx. at 466 (citing *Passa*, 123 Fed.Appx. at 698).

[3] Redbubble does not challenge jurisdiction under Ohio's long-arm statute.  (ECF Doc. 18 at 7).

Under the Due Process clause, "[t]he exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Harris v. Lloyds TSB Bank, PLC*, 281 Fed. App'x 489, 494 (6th Cir. 2008). The Sixth Circuit has adopted a three-part test for exercising specific jurisdiction:

> First, the defendant must **purposefully avail** himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must **arise from** the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant **reasonable**.

*Id.* (emphasis added). Contrary to Redbubble's assertion, Victoria's Secret does not bear the burden of proving these requirements by a preponderance of the evidence. (ECF Doc. 18 at 6). A plaintiff need only make a prima facie showing of jurisdiction, and all permissible inferences must be drawn in its favor. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) ("[T]he district court in this case should have required [plaintiff] only to make a prima facie showing of personal jurisdiction. The district court should have viewed the evidence in the light most favorable to [plaintiff], and it should not have considered any controverting evidence submitted by [defendant]."); *see also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). The requirements for specific jurisdiction are clearly satisfied here.

## 1. Redbubble Purposefully Availed Itself Of The Privilege Of Acting In Ohio.

"Purposeful availment" exists where the defendant's actions "create a 'substantial connection' with the forum state." *Harris*, 281 F. App'x at 494–95 (citation omitted). Here, Redbubble has a substantial connection with Ohio as a result of its fully interactive website, which generates millions of dollars in revenue from sales to Ohio residents.

**Redbubble's Website.** A website satisfies the purposeful availment requirement "if the website is interactive to a degree that reveals specifically intended interaction with residents of

the state." *See, e.g., Bird*, 289 F.3d at 874. In evaluating a website for jurisdictional purposes, the Sixth Circuit has adopted the "*Zippo* sliding scale," which distinguishes between interactive and passive websites. *Cadle Co. v. Schlichtmann*, 123 Fed. App'x 675, 678 (6th Cir. 2005), citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). At one end of the scale, "[p]ersonal jurisdiction cannot be asserted over a defendant with a merely passive website that does nothing more than provide information to users in the forum state." *513 Ventures, LLC v. PIV Enter.*, 2012 U.S. Dist. LEXIS 39775, *7-8 (S.D. Ohio Mar. 23, 2012). At the other end of the scale, "jurisdiction over a defendant is proper where the defendant 'clearly does business over the internet by entering into contracts with residents of other states which involve the knowing and repeated transmission of computer files over the internet.'" *Id.* at *8 (citation omitted). For websites that fall between those extremes, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the website." *Id.*

Redbubble's website is fully interactive and purely commercial. As described in the Complaint, redbubble.com is a print-on-demand service through which customers purchase a wide variety of products custom imprinted with graphic designs. (Complaint ¶¶ 22-23). When a purchase is made, Redbubble "processes the transaction and fulfills the order," which includes manufacturing and shipping the product to the customer. (*Id.* at ¶¶ 26, 28). Redbubble also "controls all financial aspects of the sales occurring on its website"—collecting the purchase price, retaining some of the proceeds, and disbursing the remainder to other parties involved in the transaction, including twelve John Doe defendants. (*Id.* at ¶ 27).

Redbubble does not dispute that its website is fully interactive, and admits selling allegedly infringing products to Ohio customers (Davis Dec., ¶ 24), easily establishing

purposeful availment. *See, e.g.*, *Bird*, 289 F. 3d at 874 (by maintaining a website on which Ohio residents could register domain names and by allegedly accepting the business of Ohio residents, defendants satisfied the purposeful-availment requirement); *Zoya Co. v. Julep Nail Parlor Co.*, 2011 U.S. Dist. LEXIS 136857, *8-11 (N.D. Ohio Nov. 29, 2011) (website sufficiently interactive where it allowed Ohio residents to place orders, store personal information, ship items to Ohio, connect to the company on social media, and subscribe to a newsletter).

Redbubble's attempts to avoid this conclusion are unavailing. First, the *Foreign Candy* case it cites involved a classic "passive" website that did not allow users to purchase any products and merely contained a link to another website that was "not affiliated in any way with" the defendant. *See Foreign Candy Co. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017, 1031 (N.D. Iowa 2013) (noting the defendant's website "does not allow a visitor to enter into a contract or to make a purchase, or even allow for an exchange of information with the host computer"). That website bears no resemblance to redbubble.com.

Second, Redbubble's argument that any sales into Ohio result from "unilateral activity by someone other than Redbubble," is untenable. (ECF Doc. 18 at 10). This assertion ignores the allegations in the Complaint regarding Redbubble's active involvement in transactions on the website, which must be accepted as true. Redbubble created and actively maintains a fully-interactive website that solicits and facilitates sales in Ohio, and cannot claim that such sales are the unilateral activity of others. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428-429 (7th Cir. 2010) (rejecting similar "unilateral" argument because "GoDaddy itself set the system up this way"); *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 908 (N.D. Ill. 2015) (rejecting similar "unilateral" argument because "defendants intentionally created and operated

commercial, fully interactive Internet stores and affirmatively selected a shipping template to ship counterfeit Monster Energy Products to United States and Illinois residents").

Finally, Redbubble's assertion that it does not have employees or property in Ohio is immaterial because "[p]hysical presence is not the touchstone of personal jurisdiction." *Apex Tool Group, LLC v. DMTCO, LLC*, 2014 U.S. Dist. LEXIS 158032, *25 (S.D. Ohio Nov. 7, 2014). Through its website, Redbubble reaches into Ohio to solicit purchases, arranges for manufacturing and deliveries to Ohio customers, and provides customer support. This is not a "fortuitous" sequence of events—but rather the intended implementation of Redbubble's business model.

**Redbubble's Significant Sales Activity In Ohio.** A defendant also purposefully avails itself of the forum if "the absolute amount of business conducted [there] represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891-892 (6th Cir. 2002). Importantly, the relevant figure for jurisdictional purposes is the total amount of the defendant's business that occurs in the forum—not the percentage of its business that occurs in the forum or the amount of allegedly improper sales into the forum. *Id.* ("The proper test for personal jurisdiction is not based on a 'percentage of business' analysis …."); *Imperial Prods. v. Rice Endura Prods.*, 109 F. Supp. 2d 809, 816 (S.D. Ohio 2000) ("These additional [non-infringing] sales are relevant to the Court's determination of whether Endura has sufficient minimum contacts with Ohio to satisfy the requirements of due process.").

Here, there has been no discovery regarding Redbubble's sales in Ohio, but publicly available information indicates that Redbubble has earned millions of dollars as a result of its ongoing business in Ohio. Redbubble's financial reports show that its total worldwide revenue

from 2014 to 2015 was over $119 million, and 60.7% of that business came from the United States.[4]  Assuming Redbubble sold equally in all 50 states, it would have earned approximately $1.4 million in revenues in Ohio in just the past two years, but the actual figure is apparently even higher.   Redbubble has contested personal jurisdiction in another infringement and counterfeiting action filed in the Southern District of Ohio, and an affidavit submitted in that case stated that 1.8% of its worldwide revenues were generated from Ohio sales.  *Vollmer, et al., v. Amazon.com, Inc., et al.*, S.D. Ohio Case No. 2:16-cv-00370 (ECF Doc. 25-1 at ¶ 12). Assuming that percentage is correct, Redbubble's revenues from sales in Ohio in the past two years would be over $2 million.  *See Bird*, 289 F.3d at 872 (at the pleading stage plaintiff could assume an equal distribution of transactions in all states).

Earning millions of dollars in a forum from a website designed to achieve precisely that result is not "random" or "fortuitous," and is sufficient to establish Redbubble's purposeful availment in Ohio.  *See, e.g.*, *Imperial Prods.*, 109 F. Supp. 2d at 816 (finding purposeful availment where defendant sold over $2 million into Ohio but sales of infringing products were only $600); *Zoya*, 2011 U.S. Dist. LEXIS 136857, at *10-11 (finding purposeful availment where the defendant's total sales to Ohio were $946, because "[i]t is the quality of the contacts, and not their number or status, that determines whether they amount to purposeful availment"), quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).

### 2.  Plaintiff's Claims Arise From Redbubble's Ohio-Related Activities.

The second requirement for specific jurisdiction is that Victoria's Secret's claims must "arise from" Redbubble's activity in Ohio—a "lenient standard."  *See, Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007).  This requirement is satisfied when

---

[4]  *See* Redbubble 2015 Annual Report at 7, 15 (available at http://shareholders.redbubble.com/irm/PDF/969/RedbubbleAnnualReport2015)**.**

a defendant's contacts with the forum state are "related to the operative facts of the controversy," or if the plaintiff's claims are "connected with," were "made possible by," or "lie in the wake of," the defendant's activities in the forum state. *Bird*, 289 F.3d at 875 (citation omitted); *Air Prods.*, 503 F.3d at 553.

In the context of infringement claims, courts have found the "arising from" requirement satisfied where the infringement occurred through the same website or other business channel that the defendant used to conduct business in the forum. *See, e.g.*, *Bird*, 289 F. 3d at 875 ("Both the Dotster defendants' contacts with Ohio and Bird's claim of copyright and trademark violations stem from these defendants' operation of the Dotster website. As a result, the operative facts are at least marginally related to the alleged contacts between the Dotster defendants and Ohio."); *Zoya*, 2011 U.S. Dist. LEXIS 136857, at *11 (trademark claim arose from sales of infringing products through the defendant's website).

Courts also consider the location of the injury in determining whether a claim "arises from" the defendant's activity in the state—and in infringement cases the harm is inflicted where the plaintiff is located. *Neogen*, 282 F.3d at 892 ("arising from" requirement satisfied because "Neogen claims that the use of NGS's tradename on its website and its business contacts with Michigan residents under that name have caused a variety of economic harms in Michigan"); *Mor-Dall Enters. v. Dark Horse Distillery, LLC*, 16 F. Supp. 3d 874, 882 (W.D. Mich. 2014) ("arising from" requirement satisfied because "to the extent that Defendant has allegedly violated Plaintiff's federal trademarks, the cause of action arises in Michigan, where Plaintiff is located"); *Zoya*, 2011 U.S. Dist. LEXIS 136857, at *11 (noting "the injury occurs where the plaintiff does business and in the state where its primary office is located"); *V Secret Catalogue, Inc. v. Zdrok*, 2003 U.S. Dist. LEXIS 16159, *27 (S.D. Ohio Aug. 28, 2003) ("arising from" requirement

satisfied because "Plaintiffs claim that the Defendant's many references to the 'Victoria's Secret' name have caused a variety of harm, including economic harm").

All of Victoria's Secret's claims "arise from" Redbubble's activities in Ohio. The claims all concern Redbubble's offering and selling various infringing products, activities that occurred on and through Redbubble's website. (Complaint ¶¶ 30-35).[5] Moreover, the injuries from Redbubble's unlawful acts are being inflicted in Ohio, where Victoria's Secret is located. (Complaint ¶¶ 2, 7).

Redbubble admits selling the allegedly infringing products in this case to Ohio customers. (ECF Doc. 18-1 at ¶ 24). That admission undermines Redbubble's entire argument on jurisdiction because, as noted above, "the law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over the defendant." *Banyan Licensing*, 2002 U.S. Dist. LEXIS 17341, at *9.

Redbubble argues that Victoria's Secret's claims do not "arise from" its business in Ohio because its website services "are performed automatically by the Redbubble platform software." (ECF Doc. 18 at 11). Whether or not the services are provided "automatically" is irrelevant, because Redbubble is the entity that designed the system and remains responsible for providing those services on an ongoing basis to Ohio residents. The Seventh Circuit has flatly rejected this argument:

---

[5] While Redbubble admits it has actually sold allegedly infringing products, the mere offering for sale is an independent violation of the Lanham Act, even if no sales had occurred. 15 U.S.C. § 1114(1); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) ("An offer to sell without more will suffice to establish liability"). Redbubble's offers to sell Infringing Products in Ohio are therefore relevant to jurisdiction. *See Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 904 (N.D. Ill. 2015) ("[D]efendants did not need to complete a sale to imbue Illinois courts with personal jurisdiction.").

No more persuasive is GoDaddy's argument that its sales to Illinois residents are automated transactions unilaterally initiated by those residents. GoDaddy tells us that its customers enter into most transactions without any human action on GoDaddy's end. But of course the customers who buy domain names from GoDaddy are not simply typing their credit card numbers into a web form and hoping they get something in return. **GoDaddy itself set the system up this way.** It cannot now point to its hundreds of thousands of customers in Illinois and tell us, "It was all their idea."

*uBID*, 623 F.3d at 428-429 (emphasis added); *see also Weather Underground, Inc. v. Navigation Cataylst Sys.*, 688 F. Supp. 2d 693, 702 ( E.D. Mich. 2009) (rejecting similar argument because "[e]ven crediting Defendants' insistence that 'automated processes' generate the domain names based on 'generic or descriptive words' … there is no question that NCS set in motion the Web sites").

Redbubble intentionally designed a website that systematically infringes Plaintiff's rights, and has earned millions of dollars in revenue from Ohio residents as a result of that design. The infringing sales "relate to" and were "made possible by" Redbubble's business activity in Ohio, which easily satisfies the "arising from" requirement.

### 3. Exercising Jurisdiction Over Redbubble Is Reasonable.

The final requirement for specific jurisdiction is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Harris*, 281 Fed. Appx. at 494. "When making this reasonableness inquiry, courts are to consider several factors, 'including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.'" *Slate Rock Constr., Co. v. Admiral Ins. Co.*, 2011 U.S. Dist. LEXIS 97122, *16-17 (S.D. Ohio Aug. 30, 2011) (citation omitted).

Where, as here, the first two specific jurisdiction requirements are met, "[a]n inference arises that the third factor is satisfied" as well. *Bird*, 289 F.3d at 875; *Slate Rock Constr., Co. v. Admiral Ins. Co.*, 2011 U.S. Dist. LEXIS 97122, *16 (S.D. Ohio 2011) ("When the first two prongs of the due process inquiry have been satisfied, Ohio courts will 'presume the specific assertion of personal jurisdiction was proper.'") (citation omitted). The burden shifts to the defendant to establish a "compelling case" that exercising jurisdiction would be unreasonable. *Imperial Prods.*, 109 F. Supp. 2d at 816 ("If all other requirements have been satisfied, only in a 'rare situation' will the exercise of personal jurisdiction over an out-of-state defendant be unfair or unreasonable. Consequently, the burden rests 'on the party over whom jurisdiction is sought to prove that jurisdiction would be constitutionally unreasonable.'") (citation omitted).

Redbubble has not shown that it would be unreasonable for the Court to exercise jurisdiction in this case. Redbubble does not even argue that litigating the claims in Ohio would be burdensome, an implicit recognition of the obligations that flow from generating millions of dollars of revenue from Ohio customers. *See Slate Rock Constr.*, 2011 U.S. Dist. LEXIS 97122, at *17 (defendant "assumed this obligation" to defend lawsuits in Ohio by doing business in Ohio); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996) (burden on defendant was reasonable because "he knew when he entered into the Shareware Registration Agreement with CompuServe that he was making a connection with Ohio"); *Zoya*, 2011 U.S. Dist. LEXIS 136857, at *12 (burden on defendant reasonable because "it knew when it sold products to Ohio customers that it was making a connection with Ohio"). In addition, Ohio has a strong interest in this lawsuit, because Victoria's Secret is based in Ohio. *Bird*, 289 F.3d at 875 ("Ohio has a legitimate interest in protecting the business interests of its citizens ….").

Redbubble argues that exercising jurisdiction would be unreasonable because it purportedly only conducted a "minimal amount of sales" of infringing products in Ohio. (ECF Doc. 18 at 11). This argument fails in several respects. First, courts have rejected this "*de minimis*" argument as a matter of law. *See, e.g.*, *CompuServe*, 89 F.3d at 1265 ("[W]e must reject the district court's reliance on the *de minimis* amount of software sales which Patterson claims he enjoyed in Ohio."); *Banyan Licensing*, 2002 U.S. Dist. LEXIS 17341, at *9-10 ("'[R]egardless of the quantity of products sold or the shipping method used, the sale of patented products to buyers in the forum state creates specific personal jurisdiction over an out-of-state seller' without contravening constitutional norms."). Second, there has been no discovery that would allow Victoria's Secret to determine whether Redbubble's assertions as to the magnitude of its sales are accurate.

Importantly, Redbubble also ignores the significance of its ongoing sales of non-infringing products in Ohio. *Imperial Prods.*, 109 F. Supp. 2d at 816 (jurisdiction reasonable because of "the substantial revenues that Endura has generated from sales to Ohio customers" of non-infringing products). Indeed, the case Redbubble cites for this *de minimis* argument involved a defendant whose only contact with the state was one infringing sale. *Zoya Co. v. Nios, Inc.*, 2013 U.S. Dist. LEXIS 120255 (N.D. Ohio Aug. 26, 2013). In contrast, Redbubble engages in systematic, ongoing contacts with Ohio that generate millions of dollars in revenue.

Redbubble has benefitted from its business activities in Ohio for years, and has not met its burden to establish that it would be unreasonable to defend against claims arising out of those activities. Given the record before the Court and the requirement that all permissible inferences must be drawn in Plaintiff's favor, Victoria's Secret has established a prima facie case for exercising jurisdiction over Redbubble.

**B.    The Complaint States Claims in Seven Well-Pleaded Counts**

The second prong of Redbubble's motion argues that the Complaint fails to state a claim under Rule 12(b)(6).  As noted above, the testimony and documents submitted with the Davis Declaration, and Redbubble's various arguments incorporating that information, may not be considered for this purpose.  *Reilly v. Meffe*, 6 F. Supp. 3d at 779 ("Plaintiff is correct that these [new facts introduced by Defendants] should not be considered in ruling on a 12(b)(6) motion, and the Court has not considered them for purposes of the Defendants' 12(b)(6) motions in this case.").

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain a "short and plain statement of the claim[s] showing that the pleader is entitled to relief."  When considering a motion under Rule 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  As this Court recently reiterated, a court "should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true."  *Reilly*, 6 F. Supp. 3d at 768 (citing cases).  Victoria's Secret's detailed, Verified Complaint far surpasses these liberal pleading standards.

**1.    Count I: Infringement of Registered Trademarks**

Consistent with the trademark claim elements reiterated in *Skreened*, and long-recognized in the Sixth Circuit, VS's Complaint methodically sets forth seven independent claims, beginning with a claim for direct infringement of Plaintiff's registered trademarks.  After setting forth the nature of VS's business, and its acknowledged success as an innovator and category leader in the women's apparel industry, the Complaint identifies and illustrates various registered (and unregistered) trademarks used and owned by Plaintiff—a long list that includes its famous

trademark, VICTORIA'S SECRET, as well as its family of "PINK" trademarks, including PINK and LOVE PINK. (Complaint ¶¶ 1, 8-20). Complaint Exhibit A illustrates the manner in which Plaintiff's marks are actually used in different product categories, and Exhibit B lists Plaintiff's federal registrations and applications, organized by mark, registration/application number, and goods classification. For example, the first mark listed on Exhibit B is VICTORIA'S SECRET, which was granted Federal Registration No. 1146199 on January 20, 1981 for goods in Class 25 (clothing). Exhibit B also lists Plaintiff's Registration Nos. 4861930 and 4874382, for PINK and LOVE PINK respectively, in connection with cell phone cases in Class 9.

Next, the Complaint identifies Defendant Redbubble, outlines its operation of a "print-on-demand" business model in detail, and makes specific allegations of direct infringement, accusing Redbubble of using VS's trademarks (or imitations of them) in displaying, offering, selling, manufacturing and shipping infringing products (Complaint ¶¶ 22-31). Complaint ¶ 29 includes pictures of eighteen different infringing products, and Complaint Exhibits C (web pages from redbubble.com) and D (products actually purchased from Defendant) provide further examples of infringement. Complaint ¶ 30 alleges specifically and clearly that Redbubble "promoted, sold, and caused the imprinting and shipping of" the products shown in Exhibits C and D, which include imitations of Plaintiff's VICTORIA'S SECRET, PINK and LOVE PINK trademarks, among others.

Following these detailed assertions, VS makes the touchstone allegation of likelihood of public confusion. Specifically, Complaint ¶ 45 alleges that Redbubble's actions "are likely to lead the relevant trade and public to associate Redbubble, and/or the products offered or sold on Redbubble's website, with Plaintiff's business, products and services, and are likely to cause confusion, mistake or deception within the meaning of 15 U.S.C. § 1114."

With its specific allegations as to trademark ownership, unauthorized use "in connection with the sale, offering for sale, distribution, or advertising" of goods, and likelihood of confusion, Count I is a textbook claim for direct infringement under 15 U.S.C. § 1114(a). *See*, *Skreened*, 16 F. Supp. 3d at 910 (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir. 1997)).

By implicitly relying on the inadmissible Davis Declaration, Redbubble purports to avoid Plaintiff's claims of direct infringement by arguing that it "does not 'sell' the infringing products or otherwise use Plaintiff's marks in commerce." (ECF Doc. 18 at 13-14). On this basis, Redbubble attempts to liken itself to Amazon and eBay, which list finished goods, as opposed to manufacturing infringing products "on-demand." *Id*. Redbubble's assertions will be tested through discovery, but in the present context Victoria's Secret's detailed claims that Redbubble has "promoted, sold, and caused the imprinting and shipping of" infringing products must be accepted as true. As such, Victoria's Secret states a claim for direct infringement of its registered marks.

### 2. Count II: Secondary Liability for Infringement

Redbubble has involved third parties in its unlawful enterprise, identified in the Complaint as "John Does 1-12." The Complaint alleges specifically that Redbubble "has contracted [with the John Does] to perform certain fulfillment functions (including printing, manufacturing and shipping) with respect to products bearing Victoria's Secret's trademarks," and that the John Does are paid to "carry out instructions from Redbubble to imprint particular designs onto particular products, and to ship finished products to customers." (Complaint ¶¶ 4, 40-43). The Complaint also alleges in clear terms that Redbubble has actual knowledge of the John Does' illegal activities, because: a) it "instructs John Does 1-12 to create and distribute the

Infringing Products," and b) Redbubble "created and maintains the platform and website" through which the infringements occur. (Complaint ¶¶ 50-51).

Consistent with these allegations, Count II states a claim for so-called "secondary liability" (also known as "contributory" or "vicarious" liability), holding Redbubble accountable for instructing and otherwise facilitating the infringing acts of the John Does. *See* J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 25:17 (Vol. 4, 2013) (describing contributory infringement as "liability for those who encourage or facilitate infringement by another"). After establishing Redbubble's knowledge, Victoria's Secret alleges that "Redbubble has caused, materially encouraged, enabled, and contributed to the creation and distribution of the Infringing Products by providing the platform for image uploading, enabling orders and payment, and instructing the manufacture and distribution of the Infringing Products." (Complaint ¶ 52).

Redbubble quibbles with the language of Plaintiff's allegations, but there are no "magic words" necessary to state a claim for the judicially-created doctrine of secondary liability. (ECF Doc. 18, at 14-15). Count II sets forth a clear claim, alleging that Redbubble directly controls the infringing acts of the John Doe defendants, and is therefore responsible for them. *See, Habeeba's Dance of the Arts, Ltd. v Knoblauch*, 430 F. Supp. 2d 709, 714-15 (S.D. Ohio 2006).

Whether Redbubble is actually liable for the John Does' infringement depends on factual issues that cannot be resolved on a motion to dismiss: Does Redbubble have written contracts with the John Does? If so, who bears liability for infringements? Are the relationships and agreements at arm's length, or only a sham to allow for the legalistic arguments Redbubble asserts now? Only time, and discovery, will tell. *See id.* at 715. For purposes of pleading,

however, Count II states a viable, alternative claim for either contributory and/or vicarious infringement.[6]

### 3.    Count III: Counterfeiting

Redbubble's arguments on Count III for counterfeiting are spurious.  Complaint ¶ 29 and Exhibits C and D identify numerous counterfeit products, ranging from bogus "VICTORIA'S SECRET" handbags to imitation "PINK" and "LOVE PINK" apparel and cell phone cases.  The Complaint also alleges that Redbubble's actions in manufacturing and selling such items are willful and knowing, within the meaning of 15 U.S.C. § 1116(d)(1)(B).  (Complaint ¶ 58).

Nevertheless, Defendant insists that Count III is "vague" and "gives Redbubble no real notice of what the counterfeiting claim covers."   (ECF Doc. 18 at 16, n. 3). These empty protestations cannot be taken seriously when, as shown above on page 1, Redbubble continues to sell counterfeit VS products to this day.  *See* Complaint Exhibit B, listing Plaintiff's pleaded Registration Nos. 4861930 and 4874382, for PINK and LOVE PINK respectively, in connection with cell phone cases in Class 9.  Redbubble is currently selling identical products bearing these same marks, the very definition of counterfeiting under the Lanham Act.[7]

---

[6] Redbubble argues that the Sixth Circuit has not yet specifically recognized the "vicarious," as opposed to "contributory," form of secondary liability, but there is nothing to prevent it from doing so in an appropriate case. *See, Tovey v. Nike, Inc.*, 2012 WL 7017821 at *12 (N.D. Ohio July 3, 2012) ("This court need not decide whether the Sixth Circuit would recognize a cause of action for vicarious liability because [plaintiff] fails to allege sufficient facts to make plausible such a claim."). Here, either directly or by reasonable inference, Plaintiff alleges that Redbubble and the John Does have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over infringing product. Thus, Count II states a plausible claim for both forms of secondary liability. *Id.*

[7] Redbubble's representation that it "promptly removed" offending products from its website after receiving Plaintiff's May 11, 2016 cease and desist demand is also incorrect.  Counterfeit phone cases were among the products listed in Plaintiff's letter.  (ECF Doc. 18 at 17).

### 4.     Count IV: Federal Unfair Competition

Redbubble does not seriously contest the adequacy of Count IV, nor could it.  A claim for federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), consists of essentially the same elements as federal infringement (Count I), but does not require that a plaintiff's mark be registered.  As the Sixth Circuit noted in *Audi AG & Volkswagen of America, Inc. v. D'Amato ("Audi AG"),* 469 F.3d 534, 542 (6th Cir. 2006), "[u]nder the Lanham Act, 15 U.S.C. § 1051 *et seq.,* we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks."

Thus, the same allegations set forth with respect to Count I, including the "touchstone" allegation that Redbubble's unlawful acts are likely to cause confusion, also state a separate claim for Lanham Act unfair competition.  (Complaint ¶¶ 61-62).  For example, Plaintiff's PINK mark has been used extensively for apparel items for many years, but is not yet registered in Class 25.  Count IV sets forth a claim for infringement of these and other unregistered marks. (Complaint ¶¶ 62, 63).

In addition to straightforward infringement of unregistered marks, the Complaint makes further allegations of unlawful activity under Section 43(a).  For example, Complaint ¶¶ 32-36 allege that Redbubble programmed Victoria's Secret's trademarks into the search function of its website, such that potential customers are directed to certain products, in order to generate optimal search results and maximize sales.  In addition, the Complaint alleges that Redbubble programmed its website to use Plaintiff's trademarks for recommending "related searches," also to maximize sales.  Redbubble's motion ignores the fact that these additional uses of Plaintiff's marks are also alleged to be confusing and unlawful in Count IV.  (Complaint ¶ 62).

### 5. Count V: Dilution

For its federal dilution claim under 15 U.S.C. § 1125(c), Plaintiff alleges that its registered trademark, "VICTORIA'S SECRET," "is distinctive and famous, and attained such status prior to Redbubble's acts…" (Complaint ¶ 66).[8] Further, Plaintiff asserts that Redbubble's acts "are likely to cause dilution" of the mark "by blurring and/or tarnishment," the two actionable forms of dilution. (Complaint ¶ 67). The Complaint addresses and attaches images of two examples of lewd and offensive, dilutive products sold by Redbubble. (Complaint ¶¶ 37-38 and Exhibits E1 and E2).

In its 12(b)(6) motion, Redbubble addresses the merits of the dilution claim (not the claim itself), arguing that the two products illustrated in Complaint Exhibit E do not use trademarks similar enough to VICTORIA'S SECRET, or constitute fair use. (ECF Doc. 18 at 18-19). These merits arguments are premature and should be ignored. As in *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 953 (S.D. Ohio 2003), "[h]aving adequately pled facts supporting dilution claims,… Plaintiff[] deserve[s] an opportunity to support [its] claims with additional facts procured through the discovery process."

### 6. Counts VI and VII for State Law Claims

Plaintiff's allegations supporting its federal claims also satisfy the pleading requirements for violations of Ohio statutory and common law, as set forth in Counts VI and VII. (Complaint ¶¶ 69-79). As noted in *Victoria's Secret Stores v. Artco Equip. Co., Inc.*, 194 F. Supp. 2d 704, 724, n. 8 (S.D. Ohio 2002), "the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes."

---

[8] Regarding the fame of "VICTORIA'S SECRET," *see Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003).

Unable to identify any inadequacies in Plaintiff's state claims, Redbubble argues prematurely that it may have a viable defense under the Communications Decency Act ("CDA"), 47 U.S.C. § 230. (ECF Doc. 18 at 19-21). In certain, limited situations, the CDA provides immunity to internet service providers for "good samaritan" blocking and screening of offensive material, as articulated in 47 U.S.C. § 230(c). Redbubble is free to assert such a defense at an appropriate time, but it will not likely succeed. The defendant in *Skreened* made the same argument, which Judge Frost rejected on summary judgment, reasoning that the CDA "does not apply in the trademark context or in the context of a state law right of publicity claim," referencing CDA § 230(e)(2) ("Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property") and CDA § 230(e)(3) ("Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section"). *Skreened*, 16 F. Supp. 3d at 918-19.

In any event, the possibility that Redbubble might raise this (or any other) defense in the future does not affect Plaintiff's well-pleaded claims under Ohio statutory and common law.

## IV. CONCLUSION

Evaluating a Rule 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Here, in practical terms, Victoria's Secret accuses Redbubble of running a modern-day infringement and counterfeiting juggernaut, fueled by a fully interactive e-commerce website that offers, sells, manufactures and delivers infringing products to consumers in Ohio, across the nation and around the world. A fair reading of the Complaint, drawing all inferences in Plaintiff's favor, leads to the common sense conclusion that Victoria's Secret has gone far beyond federal notice pleading requirements, stating seven plausible claims for violations of its rights under federal and state law.

Redbubble's motion, premised in large part on impermissible facts outside the Complaint, amounts to an improper and premature argument on the merits of the Plaintiff's claims, and Redbubble's potential defenses. The merits of the case are for another day. For present purposes, and for all the reasons set forth above, the motion to dismiss should be denied in its entirety.

Date Filed: October 13, 2016                    Respectfully submitted by:

                                               /s/ Keith Shumate

                                               Keith Shumate  (0056190)
                                               Heather Stutz  (0078111)
                                               Squire Patton Boggs (US) LLP
                                               2000 Huntington Center
                                               41 South High Street
                                               Columbus, Ohio 43215
                                               614.365.2700
                                               keith.shumate@squirepb.com
                                               heather.stutz@squirepb.com


                                               Kevin C. Parks (Admitted *Pro Hac Vice*)
                                               Michelle L. Zimmermann (Admitted *Pro Hac Vice*)
                                               Stella Brown (Admitted *Pro Hac Vice*)
                                               Leydig, Voit & Mayer, Ltd.
                                               180 North Stetson
                                               Two Prudential Plaza, Suite 4900
                                               Chicago, Illinois
                                               312.616.5669
                                               kparks@leydig.com

                                               *Attorneys for Plaintiff*
                                               VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC.

**CERTIFICATE OF SERVICE**

A copy of the foregoing has been filed electronically October 13, 2016. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Keith Shumate*         
Keith Shumate
