## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., | : | |
| | : | |
| Plaintiff, | : | Case No. 2:16-cv-00712 |
| | : | |
| v. | : | Judge James L. Graham |
| | : | |
| REDBUBBLE INC., et al., | : | Magistrate Judge Elizabeth |
| | : | Preston Deavers |
| Defendant. | : | |

## REDBUBBLE INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS
## FOR LACK OF JURISDICTION, OR, IN THE ALTERNATIVE, TO DISMISS
## PLAINTIFF'S CLAIMS UNDER FED. R. CIV. P. 12(b)(6)

John P. Gilligan (0024542)
TRIAL ATTORNEY
ICE MILLER LLP
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: john.gilligan@icemiller.com

OF COUNSEL:
Mary F. Geswein (0063361)
ICE MILLER LLP
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-5038
Facsimile: (614) 222-3436
Email: mimi.geswein@icemiller.com

Kenneth B. Wilson (*Admitted pro hac vice*)
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, CA 94019
Telephone: (650) 440-4211
Email: ken@coastsidelegal.com

*Counsel for Defendant Redbubble Inc.*

# TABLE OF CONTENTS AND SUMMARY

INTRODUCTION & SUMMARY OF ARGUMENT ............................................................1

ARGUMENT...............................................................................................................2

  I.   PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF SHOWING SPECIFIC
PERSONAL JURISDICTION OVER REDBUBBLE ............................................................2

     A.   Plaintiff Has Not Established that Redbubble Purposefully Availed Itself of the
Privilege of Doing Business in Ohio.....................................................................3
     B.   Plaintiff Has Not Shown that Its Claims "Arise from" Redbubble Conduct in or
Directed at Ohio....................................................................................................10
     C.   Plaintiff Has Not Demonstrated that the Exercise of Jurisdiction Over Redbubble in
Ohio Would Be Reasonable ...............................................................................12

  II.   ALTERNATIVELY, EACH OF PLAINTIFF'S CAUSES OF ACTION SHOULD BE
DISMISSED FOR FAILURE TO STATE A CLAIM...........................................................13

     A.   First Count for Direct Trademark Infringement.....................................................15
     B.   Second Count for Secondary Trademark Infringement ............................................16
     C.   Third Count for Counterfeiting .................................................................................19
     D.   Fourth Count for Lanham Act Unfair Competition...................................................19
     E.   Fifth Count for Federal Trademark Dilution.............................................................20
     F.   Sixth and Seventh Counts for State Law Claims .....................................................22

CONCLUSION.............................................................................................................24

CERTIFICATE OF SERVICE .........................................................................................25

**TABLE OF AUTHORITIES**

## Cases

*American Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682 (N.D. Ohio 2002) ......................21

*Ashcroft v. Iqbal*, 556 U.S., 662 (2009) ............................................................................13, 16

*AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004) ......................................................20

*Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161 (C.D. Cal. 1998) ..................21

*Banyan Licensing, Inc. v. Orthosupport Int'l, Inc.*, 2002 U.S. Dist. LEXIS 17341,(N.D. Ohio Aug. 15, 2012) ......................................................................................................................6

*Batzel v. Smith*, 333 F.3d 1018, 1037 (9th Cir. 2003) ................................................................22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................13, 16, 21

*Best v. AT&T Mobility, LLC*, 2015 U.S. Dist. LEXIS 30866 (S.D. Ohio March 10, 2015) .........20

*Calphalon Corp. v. Rowlett*, 228 F.3d 718 (6th Cir. 2000) ........................................................11

*Carafano v. Metrosplash, Inc.*, 339 F.3d 1119 (9th Cir. 2001) ..................................................23

*Chapman v. Lawson*, 89 F. Supp. 3d 959 (S.D. Ohio 2015) ........................................................2

*Chloe v. Queen Bee of Beverly Hills, LLC* 630 F. Supp. 2d 350 (S.D.N.Y. 2009) .....................12

*Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*, 692 F.3d 469 (6th Cir. 2012) ......................................................................................................................6, 10

*Conn v. Zakharov*, 667 F.3d 705 (6th Cir. 2012) ........................................................................2

*Council on American-Islamic Relations Action Network, Inc. v. Schlussel*, No. 11–10061, 2011 WL 3563290 (E.D. Mich. August 11, 2011) ........................................................20, 21

*Dow Corning Corp. v. Xiao*, Case No. 11-10008-BC, 2011 WL 2015517 (E.D. Mich. May 20, 2011) ......................................................................................................................22

*Elcometer, Inc. v. TQC-USA, Inc.,* 2014 U.S. Dist. LEXIS 38941 (E.D. Mich. March 25, 2014) ......................................................................................................................17

*Foley v. Yacht Management Group, Inc.*, Case No. 08 C 7254, 2009 U.S. Dist. LEXIS 58441 (N.D. Ill. July 9, 2009) ................................................................................3, 8, 10

*Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017 (N.D. Iowa 2013) ..7, 8

ii

*Free Kick Master LLC v. Apple Inc.*, No. 15-cv-03403-PJH, 2015 WL 6123058 (N.D. Cal. Oct. 19, 2015) ........................................................................................................ 22, 23, 24

*GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011) ......................... 4, 13

*Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, (7th Cir. 1992) ... 16

*Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) .............................. 4, 13

*Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ...................................... 16, 22

*Imperial Prods. v. Rice Endura Prods.*, 109 F. Supp. 2d 809 (S.D. Ohio 2000) ..................... 6, 10

*Inc. v. Imago Eyewear Pty., Limited*, 167 Fed. Appx. 518 (6th Cir. 2006) .................................. 2

*Inspired by Design, LLC v. Sammy's Sew Shop, LLC,* Case No. 16-CV-2290-DDC-KGG (D. Kan. Aug. 3, 2016) ....................................................................................................................... 8

*Martin v. Insight Commc'ns Co., LP*, No. 2:10-cv-537, 2011 U.S. Dist. LEXIS 3260118 (S.D. Ohio Mar. 28, 2011) ........................................................................................................ 19

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894  (9th Cir. 2002) ............................................. 21

*Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) 4, 13, 15

*Monster Energy Co. v. Chen Wensheng,* 136 F.3d 897 (N.D. Ill. 2015) .................................... 10

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) .................................. 10

*Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933 (S.D. Cal. 2013) ...................................... 24

*Perfect 10, Inc. v. Ccbill LLC*, 488 F.3d 1102 (9th Cir. 2007) .............................................. 23, 24

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012) .............................................. 18

*Shamsuddin v. Vitamin Research Products*, 346 F. Supp. 2d 804 (D. Md. 2004) ....................... 13

*The Ohio State University v. Skreened, Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014).... 1, 14, 23, 24

*Theunissen v. Matthews,* 935 F.2d 1454 (6th Cir.1991) ......................................................... 2, 3

*Tiffany Inc. v. eBay Inc.*, 600 F.3d 93 (2nd Cir. 2010) ................................................. 14, 15, 18

*Too, Inc. v. TJX Cos.*, 229 F. Supp. 2d 825 (S.D. Ohio 2002) .................................................. 19

*Tovey v. Nike, Inc.*, 2012 WL 7017821 (N.D. Ohio July 3, 2012) ....................................... 17, 18

*Tovey v. Nike, Inc.*, 2013 U.S. Dist. LEXIS 16084 (N.D. Ohio February 6, 2013)............... 16, 17

*Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012) ..4, 13

*uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010)........................................10, 11

*Vollmer, et al. v. Amazon.com, Inc., et al.*, S.D. Ohio Case No. 2:16-cv-00370 (Doc. #25-1).......6

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ................................................................................3, 8

*Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746 (E.D. Mich. 2000)......................3, 9

*Zoya Co. v. Julep Nail Parlor Co.*, 2011 U.S. Dist. LEXIS 136857 ...........................................6

*Zoya v. Nios*, 2013 WL 4511922 (S.D. Ohio 2013) .................................................................12

## Other Authorities

47 U.S.C. § 230...................................................................................................................22, 23

CO\5442322.1

<u>**INTRODUCTION & SUMMARY OF ARGUMENT**</u>

Notwithstanding Plaintiff Victoria's Secret Stores Brand Management, Inc.'s ("Plaintiff") attempts to falsely paint Defendant Redbubble Inc. ("Redbubble") as an "unbridled trademark infringement and counterfeiting machine," the core jurisdictional issue remains whether an Ohio court can exercise personal jurisdiction over a worldwide electronic marketplace that allows third party artists to sell products over the Internet to customers, some of whom reside in Ohio. While conceding that this Court lacks general jurisdiction over Redbubble, Plaintiff argues that specific personal jurisdiction exists based almost exclusively on general contacts. (*See* Doc. #21). Indeed, the evidence connecting Plaintiff's causes of action to Ohio can be summarized as follows: third-party sellers outside of Ohio designed, listed on Redbubble's worldwide marketplace, and sold to Ohioans less than *three dollars* ($3.00) of allegedly infringing products manufactured by third party fulfillers outside of Ohio. This conduct falls woefully short of the requirements for personal jurisdiction. Accordingly, Plaintiff's claims against Redbubble must be dismissed.

Plaintiff's attempts to avoid dismissal for failure to state a claim are similarly flawed and based on a mischaracterization of the record, which consists largely of Plaintiff's own pleadings. Plaintiff relies heavily on its mischaracterization of Redbubble as a "print-on-demand" service and the opinion in *The Ohio State University v. Skreened, Ltd.*, 16 F. Supp. 3d 905 (S.D. Ohio 2014), which dealt with one such business. But as Plaintiff's own Complaint makes clear, Redbubble is not a "print-on-demand" business, because (among other reasons) Redbubble does not print anything; indeed, Plaintiff separately named as Doe Defendants the third-parties that "perform certain fulfillment functions (including printing, manufacturing and shipping)." (Doc. #1, ¶4). Nor does Redbubble create, provide or sell the infringing products. As Plaintiff concedes, it is third-party artists or users who create and upload the listings for sale to

1

Redbubble's website. While Plaintiff may have claims against those third party sellers, the allegations of the Complaint do not support such a claim against Redbubble for merely providing access to a marketplace through which third parties can buy and sell products. As a result, Plaintiff's Complaint must be dismissed pursuant to FRCP 12(b)(6).

## ARGUMENT

## I. PLAINTIFF HAS FAILED TO MEET ITS BURDEN OF SHOWING SPECIFIC PERSONAL JURISDICTION OVER REDBUBBLE[1]

"[I]n the face of a properly supported motion for dismissal, a plaintiff may not stand on his pleadings, but must, by affidavit or otherwise, set forth *specific facts* showing that the court has jurisdiction." *See, Inc. v. Imago Eyewear Pty., Limited*, 167 Fed. Appx. 518 (6th Cir. 2006) (emphasis added), *quoting Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). If the plaintiff fails to set forth specific facts in support of jurisdiction, the court "may consider the defendant's undisputed factual assertions" and grant the motion based on those assertions. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012); *see also Chapman v. Lawson*, 89 F. Supp. 3d 959, 968 (S.D. Ohio 2015) (granting motion to dismiss based on defendant's affidavits, and noting that in response to those affidavits, "plaintiff has not set forth any other specific facts that would allow the [court] to conclude he has met his burden of showing personal jurisdiction").

Instead of submitting evidence to challenge the detailed showing in the Davis Declaration that Redbubble has not made sales or engaged in other conduct connected with or directed at Ohio, Plaintiff chose to rely solely upon the allegations of its Complaint, which, although verified, were made largely on information and belief. Plaintiff's Complaint does not set forth *specific facts* establishing that Redbubble is subject to personal jurisdiction in Ohio. On the present record, which Plaintiff has not enhanced by discovery or live testimony, Plaintiff fails to

---

[1] Plaintiff concedes that this Court lacks general jurisdiction over Redbubble, instead relying exclusively on specific jurisdiction to defeat Redbubble's motion. (See Doc. #21, at 5-14).

meet its burden to establish any of the elements for specific personal jurisdiction over

Redbubble. Accordingly, Redbubble's jurisdictional motion must be granted.[2]

### A. Plaintiff Has Not Established that Redbubble Purposefully Availed Itself of the Privilege of Doing Business in Ohio

As the Supreme Court recently held in *Walden v. Fiore*, 134 S. Ct. 1115 (2014),

purposeful availment requires that the relationship between a defendant and the forum state

"must arise out of contacts that the 'defendant *himself*' creates with the forum state," and not be

"based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other

persons affiliated with the State." *Id.* at 1122-23 (emphasis in original). Here, the specific facts

from the Davis Declaration (as opposed to the conclusory allegations of the Complaint) show

that Redbubble does not sell products in Ohio (or anywhere else), and does not itself direct any

specific activity at Ohio. While third-party sellers may use Redbubble's worldwide marketplace,

which physically resides on servers outside Ohio, to list and sell their products to Ohio residents,

such conduct cannot as a matter of law create jurisdiction over Redbubble in Ohio under

*Walden*.[3] It would violate due process to require Redbubble to defend itself in Ohio based on the

present record before the Court.

### 1. Defendant Does Not "Sell" Infringing Products in Ohio or Anywhere Else

Plaintiff's jurisdictional arguments are largely based on the assumption that Redbubble

---

[2] Alternatively, to the extent the Court finds that Plaintiff has presented specific facts that create a conflict with Redbubble's evidentiary showing, the Court should hold an evidentiary hearing, rather than denying the motion outright. *See Theunissen*, 935 F.2d at 1465 ("In view of the directly contradictory nature of the parties' assertions, an evidentiary hearing is necessary to determine which factual account is accurate").

[3] As detailed in subsection 2 below, even third-party sellers who actually sell products into a forum state using an online marketplace like Redbubble may not be subject to jurisdiction in that state, since those transactions occur "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity" of the third-party purchasers. *See, e.g., Foley v. Yacht Management Group, Inc.*, Case No. 08 C 7254, 2009 U.S. Dist. LEXIS 58441 (N.D. Ill. July 9, 2009) (refusing to hold defendant who sold product over the widely accessible eBay online marketplace subject to personal jurisdiction where the product was sold because the sales process "does not rise to the level of purposeful conduct required to assert specific jurisdiction"); *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746 (E.D. Mich. 2000) (dismissing claim against an eBay seller for lack of personal jurisdiction).

made "sales" of infringing products in Ohio, a premise completely unsupported by the record. Indeed, to the extent that Plaintiff's Complaint contains any specific allegations relevant to Plaintiff's argument, they undermine Plaintiff's position.

Ms. Davis' Declaration describes in detail (and without contradiction by Plaintiff) that Redbubble's customers, not Redbubble itself, make any sales over the Redbubble marketplace. Specifically, Ms. Davis explains that "[m]uch like eBay or the Amazon Marketplace, Redbubble hosts an Internet marketplace platform . . . where independent third-party artists can load and sell their creative works . . . ." (Doc. #18-1, at ¶3). She also explains how Redbubble "connects third-party artists that sell products on Redbubble.com with third-party fulfillers who manufacture the artists' products or who deliver those products to customers." (*Id.*). Ms. Davis further testifies that Redbubble itself "does not design or upload creative works to the marketplace; it does not review or approve the content offered for sale by users prior to upload; it does not manufacture or deliver products bearing those creative works; and ***it does not sell products via the Redbubble marketplace***." (*Id.* at ¶4).

There is nothing in this Declaration (or elsewhere) to suggest that Redbubble itself sells products. Courts have consistently held that the activities of online marketplaces like Redbubble do not rise to the level of "sales." *See, e.g., Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673 (W.D. Wash. July 16, 2015) (Amazon.com not liable for trademark infringement based on sale of products listed by third parties on its site, even though Amazon stored and shipped certain products; Amazon merely "enables third-party vendors to sell and distribute a variety of products to the public"); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) (similar); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012) (Amazon.com was not a seller per the Lanham Act); *GMA Accessories, Inc. v. BOP,*

4

*LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011) ("[w]hen parties act as intermediaries for a transaction . . . , no sale between them has occurred").

Notwithstanding this evidence, Plaintiff **falsely** asserts at least five times that Redbubble admitted making infringing sales into Ohio, citing to the Davis Declaration. *See* Doc. #21 at pp. i. (referencing "Redbubble's admitted sale of infringing products in Ohio"), 4 ("Redbubble also admits that it sold the infringing products into Ohio"), 6 (claiming Redbubble "admits selling allegedly infringing products to Ohio customers), 11 (arguing that "Redbubble admits selling the allegedly infringing products in this case to Ohio customers"), and 11 fn. 5 (again claiming that "Redbubble admits it has actually sold allegedly infringing products"). But the Davis Declaration says nothing of the sort. What she actually testifies is that of the allegedly infringing listings identified in Plaintiff's Complaint, "[t]here were only two sales to Ohio customers." (Doc. # 18-1, ¶ 24). Given Ms. Davis' unambiguous description of the Redbubble marketplace, as well as her direct and explicit denial that Redbubble sells **any** products, it is crystal clear that the sales referenced by Plaintiff were made by third-party sellers. [*Id*. ¶ 3]  In no way can these statements reasonably and in good faith be construed as "admissions" that Redbubble sold allegedly infringing products in Ohio.

Plaintiff offers no specific facts to support its conclusory assertion that Redbubble "sells" products or to contradict the Davis testimony. To the contrary, the "specific facts" Plaintiff alleges (i.e., that third-party users create the allegedly infringing designs and "upload [those] images to Redbubble's website" (Doc. #1, ¶ 24), and that separate third-party Doe Defendants "perform certain fulfillment functions (including printing, manufacturing and shipping) with respect to" the accused products (*Id.* at ¶ 4)) are consistent with the Davis Declaration, and highlight that while various third-parties who use the Redbubble platform may have relevant

CO\5442322.1

contacts with Ohio, Redbubble does not.[4]

In sum, Plaintiff's assertions that Redbubble "sells" infringing products in Ohio (or elsewhere) are completely without factual support. Thus, the cases cited by Plaintiff where personal jurisdiction was established by defendant's sales of infringing products in the forum state simply do not apply.[5] *See, e.g., Banyan Licensing, Inc. v. Orthosupport Int'l, Inc.*, 2002 U.S. Dist. LEXIS 17341,(N.D. Ohio Aug. 15, 2012) ( "the sale of [infringing] products to buyers in the forum state creates specific personal jurisdiction over an out-of-state seller"); *Imperial Prods. v. Rice Endura Prods.*, 109 F. Supp. 2d 809 (S.D. Ohio 2000) (defendant directly sold $600 of infringing product to Ohio residents); *Zoya Co. v. Julep Nail Parlor Co.*, 2011 U.S. Dist. LEXIS 136857 (defendant sold $946 of product into Ohio).

      2.      Redbubble's Operation of a Web Site that Is Accessible by Ohio Residents Does Not Constitute Purposeful Availment.

While the operation of a website may justify personal jurisdiction if the site "is interactive to a degree that reveals specifically intended interaction with residents of the state," under *Walden*, **the defendant,** not other third parties, must specifically intend to interact with residents of the state via the website. *See Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*, 692 F.3d 469, 472-73 (6th Cir. 2012) (citations omitted) (the purposeful availment requirement ensures that  defendant's actions create a "substantial connection" to the forum state, such that the defendant "should reasonably anticipate being hauled into court

---

[4]      Curiously, Plaintiff has not named the individuals who created and uploaded the allegedly infringing products for sale, perhaps because to do so would highlight that those third parties, not Redbubble, are the "sellers" for purposes of trademark law.

[5]      Contrary to Plaintiff's arguments, the Davis Declaration submitted by Redbubble in the pending *Vollmer* case does not admit that Redbubble has "sales" in Ohio, or engaged in "sales activity" in Ohio. Rather, consistent with the more detailed Declaration submitted in this case, Ms. Davis merely testified in the *Vollmer* case Declaration that while Redbubble derived revenue from third-party sales of products to customers in Ohio, it did not itself sell any products into Ohio. *Vollmer, et al. v. Amazon.com, Inc., et al.*, S.D. Ohio Case No. 2:16-cv-00370 (Doc. #25-1, at ¶¶ 4-6, 12).

there."). Only by focusing on the ***defendant's conduct*** can the Court satisfy the purpose behind purposeful availment, namely to protect a defendant "from being hauled into court solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.* (citations omitted).

As noted above, Redbubble does not sell products, either to Ohio residents or otherwise, via the Redbubble web site. Rather, Redbubble merely provides a forum where third-parties can contract to sell products to whoever they choose to sell to, wherever they choose to sell. As a result, this case is quite different from the cases cited by Plaintiff, where the defendants themselves sold products to or contracted with residents of the forum state. Notably, Plaintiff has not cited a single case, and Redbubble is unaware of any, in which purposeful availment was found where a defendant provided an online marketplace but did not itself sell products via the marketplace

This fact pattern is much closer to *Foreign Candy Co., Inc. v. Tropical Paradise, Inc.*, 950 F. Supp. 2d 1017 (N.D. Iowa 2013), which Plaintiff summarily dismisses as involving a "classic passive website." In *Foreign Candy*, defendant's web site facilitated the worldwide sale of products by a third-party online retailer outside the forum state by providing a web link from defendant's own web site to the third-party retailer's site. The district court refused to find specific jurisdiction over the defendant, noting that there is a "distinction between web activity of a defendant and web activity of a third-party, which may benefit or relate to the defendant, where the third-party is not owned or operated by the defendant." *Id.* at 1129-30 and fn. 4 (discussing and citing to several cases holding that providing a "hyperlink" or signpost to a third-party vendor's listings is "insufficient to establish personal jurisdiction over a defendant").

While Redbubble hosts Web pages permitting third parties to upload, list and sell their

products via the Redbubble marketplace, rather than providing a link to a separate site where the products are offered for sale as was the case in *Foreign Candy*, the core principle is the same: purposeful availment must be satisfied by ***the defendant's conduct***. Here, Plaintiff does not dispute, and indeed specifically alleges, that while Redbubble hosts the marketplace, third-party sellers who are neither affiliated with nor controlled by Redbubble create and upload the allegedly infringing content. It is also clear from the Davis Declaration and supporting documentation that those same third-parties, not Redbubble, contract for the sale of their products with the third-party purchasers, and that separate third-party fulfillers, not Redbubble, make the products and ship them to their ultimate destination. Redbubble is merely a conduit for the commercial activity of these third-parties, even though, using the language of *Foreign Candy*, these transactions "may benefit or relate to" Redbubble..

There is abundant case law establishing that even the third-party sellers who sell their products using a widely accessible online marketplace like Redbubble do not necessarily purposefully avail themselves of the jurisdiction of the states into which they sell their products, because "the seller cannot choose who buys the item and where that person is located and the contact between the seller and buyer is the type of random, fortuitous, and attenuated contact that is excluded from the reach of personal jurisdiction." *Foley v. Yacht Management Group, Inc.*, *supra*, 2009 U.S. Dist. LEXIS 58441 (observing that courts have "uniformly held" that third-party sellers who list their products on the eBay online marketplace are not subject to personal jurisdiction in a purchaser's home state because the sales process "does not rise to the level of purposeful conduct required to assert specific jurisdiction"). *See also Inspired by Design, LLC v. Sammy's Sew Shop, LLC,* Case No. 16-CV-2290-DDC-KGG (D. Kan. Aug. 3, 2016) (applying *Walden*, defendants who listed and sold products using Etsy, a competitor of Redbubble, were

not subject to jurisdiction in Kansas based on their advertising and sale of product to Kansas residents); *Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746 (E.D. Mich. 2000) (dismissing claim against an eBay seller for lack of personal jurisdiction, although seller's listing page on eBay had some degree of interactivity, because there were no "indications of active (or perhaps 'interactive') efforts to secure customers in the forum state").

Thus, under Plaintiff's analysis, while the creators and sellers of the allegedly infringing products could not be hauled into court in Ohio, Redbubble should not be subject to jurisdiction for providing a location-neutral forum for these same third parties to sell their products. It defies logic to interpret the law of personal jurisdiction in this manner.

In sum, Plaintiff cannot establish purposeful availment merely by uttering the words "fully-interactive website" without some additional showing that Redbubble engaged in affirmative conduct specifically directed at Ohio. Since Plaintiff has not offered any such evidence, it has failed to meet its burden of establishing specific personal jurisdiction over Redbubble.[6]

> 3. Redbubble's Receipt of Revenue from Ohio Transactions Does Not Constitute Purposeful Availment.

Plaintiff's argument regarding Redbubble's purported sales of non-infringing products in Ohio suffers the same flaw as its other purposeful availment arguments; there is nothing in the record to support a conclusion that Redbubble has ***any*** sales in Ohio, and there is uncontested evidence to the contrary. While Redbubble has made money from third-party sales to Ohio residents, it has not itself sold products into Ohio. Redbubble's situation differs fundamentally from the defendants in the cases cited at pages 7-8 of Plaintiff's opposition, who themselves

---

[6] Plaintiff claims that Redbubble "ignores the allegations in the Complaint regarding Redbubble's active involvement in transactions on the website," but then fails to point to any such allegations. Perhaps this is because, as noted throughout Redbubble's moving papers and this reply, the Complaint fails to set forth "specific facts" showing such involvement.

9

either made offers to sell or sold products into the forum state. *See, e.g., uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010) (defendant GoDaddy itself sold products to "hundreds of thousands of customers" in Illinois); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002) (defendant entered into yearly contracts with Michigan residents); *Monster Energy Co. v. Chen Wensheng,* 136 F.3d 897 (N.D. Ill. 2015) (defendants themselves made "offers to sell counterfeit products on their Internet stores"); *Imperial Prods. v. Rice Endura Prods.*, 109 F. Supp. 2d 809 (S.D. Ohio 2000) (defendant "*admits* that it has sold" the infringing product in Ohio, and also directly generated more than $2,000,000 in direct sales of non-infringing products to Ohio buyers).

As the cases make clear, to establish purposeful availment, the critical issue is not how many dollars of product were sold into the forum state, but whether the ***defendant***, as opposed to third parties, made the sales. Since the evidence demonstrates that Redbubble has not made sales into Ohio, Plaintiff would subject Redbubble to jurisdiction in this Court "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person," conduct which as a matter of law cannot serve as the basis for personal jurisdiction. *Community Trust, supra. See also Foley v. Yacht Management Group, Inc.*, *supra*, 2009 U.S. Dist. LEXIS 58441(a sale via an online marketplace is "the type of random, fortuitous, and attenuated contact that is excluded from the reach of personal jurisdiction").

**B.** **Plaintiff Has Not Shown that Its Claims "Arise from" Redbubble Conduct in or Directed at Ohio.**

Plaintiff conflates "purposeful availment" with the "arising from" requirement, arguing that an infringement claim "arises from" forum-related conduct if the infringement "occurred through the same website or other business channel that the defendant used to conduct business in the forum." (Doc. # 21, at 10) But in those cases, unlike here, the defendant itself sold

10

infringing products through its own website to residents of the forum state.

Instead of sales activities on which trademark infringement claims are typically based, Redbubble's activities consist of "display[ing]" the accused products (i.e., maintaining a web site in California where third-party sellers can upload designs they have created to be sold by those third-parties), "process[ing] the transaction", "fulfill[ing] the order by causing the Infringing Design" to be imprinted and shipped to customers by independent third-party fulfillers, control[ling] the financial aspects of sales, and allowing Sellers to input Plaintiff's marks as tags. [Complaint ¶¶ 22, 26-28, 33-35] Each of these "activities" is performed automatically by software hosted on Redbubble's servers outside of Ohio, without any human intervention, and without any intent that the activities be directed at Ohio or its residents. [Davis Decl., ¶¶ 6-15] And none of these activities comprise acts of infringement. *See* 15 U.S.C. §§ 1114, 1125. Thus, unlike the cases cited by Plaintiff, there is no "substantial connection" between Redbubble's activities and either Ohio or Plaintiff's claims. *See Calphalon Corp. v. Rowlett*, 228 F.3d 718, 724 (6th Cir. 2000) (holding that the "arising from" requirement is met "when the operative facts of the controversy arise from the defendant's contacts with the state," and noting that "Calphalon cannot show that Rowlette had a substantial connection to the state. Therefore, the cause of action does not arise from Rowlette's contact with Ohio, nor do the consequences of its acts have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable").

Plaintiff also argues that "whether or not the services are provided automatically is irrelevant," relying on the non-binding 7th Circuit opinion in *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010), but Plaintiff misunderstands Redbubble's argument. Redbubble does not contend that the mere fact that its services are provided automatically immunizes it

11

from personal jurisdiction. However, the fact that the conduct alleged in the Complaint is performed automatically is relevant because it highlights that Redbubble's conduct is not intentionally directed at Ohio (or any other particular forum). Because the activities on which Plaintiff's claims are based were initiated by third-parties, without Redbubble's direct involvement, Redbubble's conduct in this case is too tangentially connected to the conduct on which Plaintiff's claim is based to serve as a basis for establishing personal jurisdiction.

In sum, there is no sufficient connection between Redbubble's conduct, Ohio and the subject matter of Plaintiff's claim to satisfy the "arising from" requirement.

C.      **Plaintiff Has Not Demonstrated that the Exercise of Jurisdiction Over Redbubble in Ohio Would Be Reasonable**

Under the circumstances of this case, it would be unreasonable for this Court to exercise personal jurisdiction over Redbubble.  Plaintiff contends that Redbubble is subject to jurisdiction in Ohio because two Ohio residents purchased less than $3.00 of allegedly infringing product from third-party sellers outside of Ohio who unilaterally listed  products for sale worldwide on the Redbubble.com web site, and because Ohio residents also purchased some amount of non-infringing products from other third-party sellers over the Redbubble site. Various courts, including at least one court in this Circuit, have held that exercising personal jurisdiction based on such limited contacts would be unreasonable. *See, e.g., Zoya v. Nios*, 2013 WL 4511922 (S.D. Ohio 2013) (exercise of personal jurisdiction over trademark defendant would be unreasonable based on several factors, including minimal amount of sales by defendant of allegedly infringing products); *Red Earth vs. U.S.*, 728 F. Supp. 2d 238 (W.D.N.Y. 2010 ("as far as this Court is aware, it has never been held that a single sale, without more, will automatically satisfy due process requirements"); *Chloe v. Queen Bee of Beverly Hills, LLC* 630 F. Supp. 2d 350 (S.D.N.Y. 2009) ("the Supreme Court's decisions in *Travelers, McGee* and *Burger King* confirm

12

that a single internet-based sale of a counterfeit retail product is insufficient to establish personal jurisdiction over an out-of-state defendant under *International Shoe*); *Shamsuddin v. Vitamin Research Products*, 346 F. Supp. 2d 804 (D. Md. 2004) ("Two [allegedly infringing] sales to Maryland residents and maintenance of a commercial website do not rise to the level of contacts of such 'quality and nature' that the exercise of personal jurisdiction over [defendant] would comport with due process").

In sum, regardless of how many sales third-parties have made on the Redbubble platform, Redbubble has sold no product in Ohio. Absent a physical presence in Ohio or some other conduct directed at Ohio, it would be inconsistent with "fair play and substantial justice" to force Redbubble to defend itself from Plaintiff's claims in an Ohio court.

## II.     ALTERNATIVELY, EACH OF PLAINTIFF'S CAUSES OF ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

While Plaintiff gives lip service to the controlling pleading standards in *Ashcroft v. Iqbal*, 556 U.S., 662, 678-79 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007), it does not explain how its own pleading meets those standards. Nor does it reference the numerous compelling cases cited by Redbubble that refuse to impose liability on online marketplaces similar to Redbubble because they are not deemed "sellers" for purposes of trademark law. *See, e.g., Milo & Gabby,* 2015 WL 4394673 (W.D. Wash. July 16, 2015) (Amazon.com is not liable for trademark infringement based on sale of products listed by third parties on its site, even though Amazon stored and shipped certain products; Amazon merely "enables third-party vendors to sell and distribute a variety of products to the public"); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) (similar); *Tre Milano, LLC v. Amazon.com, Inc.*, No. B234753, 2012 WL 3594380 (Cal. App. 2012) (Amazon.com is not a seller under the Lanham Act); *GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457 (S.D.N.Y. 2011) ("[w]hen

parties act as intermediaries for a transaction . . . , no sale between them has occurred").

Instead, Plaintiff incorrectly argues that "Redbubble's 'print-on-demand' business model is legally the same as the one adjudicated to be infringing as a matter of law in *The Ohio State University v. Skreened, Ltd.*" and suggests that the Court need not look beyond that opinion to decide Plaintiff's motion. But Plaintiff's own pleadings establish that Redbubble's business model is fundamentally different from that of the *Skreened* defendant.

Specifically, the *Skreened* defendant obtained artwork for its products from third-party artists, but sold the products itself. In contrast, Plaintiff has not set forth specific facts to permit an inference that Redbubble itself sells products listed on its marketplace, and the governing agreements establish precisely the opposite. In addition, the *Skreened* defendant manufactured the allegedly infringing product by printing the designs on the t-shirt or other blank products itself; in contrast, Plaintiff here alleges that the third-party Doe Defendants, not Redbubble, manufacture the accused products in this case. And in *Skreened*, "Plaintiff provided Defendants repeated actual notice of much of the infringement involved," but defendants continued to print infringing products; there are no similar allegations that after receiving notice, Redbubble allowed that same infringement to continue. Thus, Skreened was a classic direct infringer, manufacturing and selling infringing products (albeit using designs from third-parties), as opposed to Redbubble, who performs none of those functions.

Far more relevant are cases involving online marketplaces like eBay and the Amazon Marketplace which, like Redbubble, do not manufacture or sell the allegedly infringing products. *See, e.g., Tiffany Inc. v. eBay Inc.*, 600 F.3d 93 (2nd Cir. 2010) (because eBay does not itself manufacture or sell the allegedly infringing products, it is not liable for direct trademark infringement or dilution, nor is it liable for contributory infringement because it was not

CO\5442322.1

supplying its service "to individuals it knew or had reason to know were selling counterfeit Tiffany goods"); *Milo & Gabby v. Amazon.com, supra* (Amazon.com is not liable for trademark infringement for products listed by third party sellers). These opinions highlight the inadequacy of Plaintiff's claims, both substantively and in terms of the lack of specificity provided.

A.       **First Count for Direct Trademark Infringement**.

Redbubble's motion to dismiss Plaintiff's First Count for direct trademark infringement focuses on the absence of any specific allegations showing that Redbubble itself "sells" the infringing products or uses Plaintiff's marks in commerce, yet Plaintiff makes no real effort to address this argument. Nor does Plaintiff address the abundant case law cited by Redbubble holding that online marketplaces like Redbubble are not "sellers" for purposes of trademark law. *See, e.g., Milo & Gabby, supra*; *Hendrickson, supra*; *Tre Milano, supra*; *see also GMA Accessories, supra* ("[w]hen parties act as intermediaries for a transaction . . . , no sale between them has occurred"). *Tiffany, supra,* 600 F.3d at 112 ("[i]nsofar as eBay did not itself sell the goods at issue, it did not itself engage in dilution").

Plaintiff argues that the "detailed assertions" of Paragraphs 22-31 of the Complaint satisfy its pleading requirements, yet these paragraphs do not set forth specific facts showing that Redbubble, as opposed to third-parties, sells the products offered on the Redbubble marketplace. To the contrary, Plaintiff specifically alleges that third-party sellers "upload" the relevant images, and that customers purchase the uploaded designs not from Redbubble, but "through Redbubble's site." [Doc. #1, ¶ 23] Plaintiff further alleges that "portions of the sales proceeds are directed to users who upload designs, and to [others] as compensation for their assistance in manufacturing and shipping products." [*Id.*, ¶ 27] And the Complaint implicitly acknowledges that Redbubble does not store or ship the third-party sellers' products. [*Id.*, ¶¶ 25-27]

CO\5442322.1

Thus, Plaintiff's own pleading establishes that Redbubble does not itself sell the accused products or use the infringing marks. As a result, there is no viable direct infringement claim, notwithstanding Plaintiff's conclusory and contradictory assertion that Redbubble has "promoted and sold" the allegedly infringing products. *See Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 611 (6th Cir. 2009) ("a conclusory and formulaic recitation of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss," particularly where more specific statements in the pleading contradict the conclusory recitations).

**B.    Second Count for Secondary Trademark Infringement**

Plaintiff makes no effort to clarify whether its "secondary liability" claim is based on contributory infringement or the separate claim of vicarious infringement (to the extent that such a claim exists). Instead, Plaintiff merges the two claims, without specifically discussing the elements of either or addressing whether those elements appear in the Complaint. But there is no claim for "secondary liability"; to proceed on such a "claim", Plaintiff must specifically allege the elements of contributory trademark infringement, and/or the elements of vicarious trademark infringement, since these two theories of liability have different requirements. *See Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1148-50 (7th Cir. 1992).

Plaintiff's Complaint falls far short of meeting the pleading requirements for either theory under *Twombly* and *Iqbal*.

1.    Vicarious Infringement

Plaintiff implicitly admits that the Sixth Circuit "has not yet specifically recognized the 'vicarious,' as opposed to 'contributory,' form of secondary liability." (Doc. #21, at fn. 6)  And Plaintiff fails to distinguish the cases confirming that no such claim exists in this Circuit. *Tovey v. Nike, Inc.*, 2013 WL486341 (N.D. Ohio February 6, 2013) ("*Tovey II*") (citations omitted) (dismissing claim for vicarious liability without leave to amend "[b]ecause the claim is not

recognized in this Circuit"); *Elcometer, Inc. v. TQC-USA, Inc.,* 2014 U.S. Dist. LEXIS 38941 (E.D. Mich. March 25, 2014) ( "vicarious trademark liability 'is a cause of action recognized in some circuits but not yet recognized in the Sixth Circuit'").

Instead, Plaintiff merely contends at footnote 6 that there is nothing to prevent a court in this Circuit from recognizing a claim for vicarious trademark infringement "in an appropriate case," relying exclusively on the overruled opinion in *Tovey v. Nike, Inc.*, 2012 WL 7017821 at *12 (N.D. Ohio July 3, 2012) (*Tovey I*). But the *Tovey* opinions actually support Redbubble's position. In *Tovey I*, the opinion cited by Plaintiff, the Magistrate Judge dismissed plaintiff's claim for vicarious liability with leave to amend because plaintiff failed to allege sufficient facts to state a plausible claim. However, the grant of leave to amend was reversed by Judge Boyko in *Tovey II*, who reasoned that "[b]ecause the claim [of vicarious trademark infringement] is not recognized in this Circuit, amending would be futile as even a properly alleged claim must be dismissed." *Tovey II*, *supra* at *7.

Even if such a claim were recognized in this Circuit, Plaintiff fails to "allege specific facts making plausible the existence of a partnership upon which to predicate vicarious infringement." *Tovey I* at *12.  In *Tovey I*, the court dismissed a vicarious infringement claim under 12(b)(6), despite plaintiff's allegations (among other things) that defendant Nike and various Doe defendants "have direct and indirect partnerships and agency relationships with each other;" that "all Defendants are members of an apparent or actual partnership and have authority to bind one another in transactions with third-parties and/or exercise joint ownership or control over the infringing Plaintiffs' Trademark and concept for use;" and that "each partner/Defendant receives a direct financial benefit from the unauthorized use of Plaintiffs' Trademark." These allegations, although insufficient, far Plaintiff's allegations Plaintiff relies of vicarious

17

infringement claim here (i.e., that Redbubble "has contracted with" the Doe Defendants, who allegedly "carry out instructions from Redbubble"). Doc. #21 at 17-18.

Accordingly, even if this Circuit recognized a claim for vicarious infringement, Plaintiff did not adequately plead such a claim. *See Tovey I, supra* (even in jurisdictions recognizing a claim for vicarious trademark infringement, plaintiff "must allege specific facts making plausible the existence of a partnership upon which to predicate vicarious liability").

### 2.     Contributory Infringement

Plaintiff ignores the primary flaw in its contributory infringement claim; Plaintiff has not alleged that Redbubble had "contemporary knowledge of which particular listings are infringing or will infringe in the future." *Tiffany, supra*, 600 F.3d at 107-08. Plaintiff claims the Complaint "alleges in clear terms that Redbubble has actual knowledge of the John Does' illegal activities, because a) it 'instructs John Does 1-12 to create and distribute the Infringing Products,' and b) Redbubble 'created and maintains the platform and website' through which the infringements occur. (Complaint ¶¶ 50-51)." Doc. #21 at 17-18. But that is precisely the "general knowledge" that courts have found legally insufficient to establish contributory infringement liability. *Tiffany, supra* at 107 ("a service provider must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods. Some contemporary knowledge of which particular listings are infringing or will infringe in the future is necessary"); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012) ("It is not enough to have general knowledge that some percentage of the purchasers of a product or service is using it to engage in infringing activities; rather, the defendant must supply its product or service to 'identified individuals' that it knows or has reason to know are engaging in trademark infringement").

Plaintiff was required to plead not just that Redbubble instructed others to create and

distribute infringing products, but that Redbubble did so with knowledge that those specific products were infringing or that "identified individuals" were using Redbubble's services to infringe Plaintiff's trademarks. *Id.* Because Plaintiff failed to set forth specific facts establishing this intent element, Plaintiff's contributory infringement "claim" must also be dismissed.

### C. Third Count for Counterfeiting

A plaintiff seeking to establish a counterfeiting claim must specifically plead and prove that Redbubble "intentionally used the [M]ark knowing it was a counterfeit." *Too, Inc. v. TJX Cos.*, 229 F. Supp. 2d 825, 837 (S.D. Ohio 2002). Despite this requirement, the Complaint merely alleges in conclusory fashion that "Defendants' acts complained of herein are willful and done with the intention of causing confusion, mistake, deception, and other damage," and that wrongful intent "is manifest by the fact that Redbubble has continued to promote, sell, manufacture and distribute infringing and counterfeit products after receiving Plaintiff's demand letter dated May 11, 2016 . . . ." (Doc. #1, ¶ 58].

This boilerplate pleading is insufficient as a matter of law to satisfy the pleading standards for alleging willful intent. *See Martin v. Insight Commc'ns Co., LP*, No. 2:10-cv-537, 2011 U.S. Dist. LEXIS 32601, at *16-18 (S.D. Ohio Mar. 28, 2011) (Watson, J.) (citation omitted) (dismissing malicious prosecution claim where "other than Plaintiff's bare assertions . . . she provides absolutely no factual support for the notion that these Defendants knowingly provided false information"; *see also Iqbal, supra* ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements"). Notably, Plaintiff neither argues that its allegations of intent satisfy the pleading requirements nor cites to any supporting case law.

### D. Fourth Count for Lanham Act Unfair Competition

Plaintiff's Fourth Count for federal unfair competition suffers from the same deficiencies

19

as the First Count for federal trademark infringement (i.e., Plaintiff has not set forth specific facts alleging that Redbubble sold the allegedly infringing products or otherwise used Plaintiff's marks in commerce). Plaintiff also does not dispute that its Fourth Count fails to identify which of "Plaintiff's unregistered trademarks identified herein" are at issue. Without specific factual allegations supporting each element of its claim, and without specifying the trademarks in dispute, Plaintiff's Fourth Count cannot survive dismissal. *See Best v. AT&T Mobility, LLC*, 2015 U.S. Dist. LEXIS 30866 (S.D. Ohio March 10, 2015) (dismissing claim based on plaintiff's failure to specify what portion of Lanham Act Section 43(a) it was asserting or the specific conduct on which the claim was based).

### E.       Fifth Count for Federal Trademark Dilution

Plaintiff does not dispute that in this Circuit, "[a] degree of similarity, ranging from 'nearly identical' to 'very similar,' is required for a dilution claim to succeed. *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004). Nor has Plaintiff challenged Redbubble's showing that as a matter of law, there is insufficient similarity to support such a claim between Plaintiff's Victoria's Secret Mark and the two allegedly dilutive products identified in and attached to the Complaint. *See, e.g., Council on American-Islamic Relations Action Network, Inc. v. Schlussel*, No. 11–10061, 2011 WL 3563290 (E.D. Mich. August 11, 2011) (dismissing dilution claim because Plaintiff's mark and the allegedly dilutive mark were insufficiently similar).

Plaintiff also did not refute Redbubble's showing that the two allegedly dilutive products identified in the Complaint are immune from a dilution claim under a statutory exception authorizing uses "identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner," or "any noncommercial use of a

mark." 15 U.S.C. § 1125(c)(3). *See American Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 695 (N.D. Ohio 2002) (denying preliminary injunction request based on "noncommercial use" exception); *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 905-07 (9th Cir. 2002) (non-commercial use exception protected defendant's distribution of a "Barbie Girl" song that commented on and parodied the Barbie image and used the Barbie mark disparagingly because such use "is entitled to full First Amendment Protection"); *Bally Total Fitness Holding Corp. v. Faber*, 29 F. Supp. 2d 1161 (C.D. Cal. 1998) (defendant's "Bally Sucks" web site is not actionable under the federal dilution statute based on the noncommercial use exception).

Plaintiff argues that Redbubble's motion is premature because it addresses the merits of Plaintiff's claim. But that is one of the very purposes of a motion to dismiss under Rule 12(b)(6): to weed out the most meritless of claims, instances where, even assuming that all of Plaintiff's allegations are true, Plaintiff cannot prevail on its claim as a matter of law. *See Twombly, supra*, 127 S. Ct. at 1966-67 (citations omitted) ("when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court").

In fact, courts in this Circuit have repeatedly resolved trademark dilution claims in favor of defendants on motions to dismiss on grounds similar to those raised by Reddbubble, and based on nothing more than an examination of the two marks. *See, e.g., Schlussel, supra* (granting Rule 12(b)(6) motion to dismiss dilution claim, even though defendant's four letter acronym "CAIR" was identical to plaintiff's mark, because "the content is nonetheless different from plaintiffs' trademark in that it displays a Star of David in place of the "A" in CAIR and is captioned with "Council on American-Israel Relations, Michigan" rather than "Council on American-Islamic Relations"); *Dow Corning Corp. v. Xiao*, Case No. 11-10008-BC, 2011 WL 2015517 (E.D.

Mich. May 20, 2011) (granting Rule 12(b)(6) motion to dismiss trademark dilution claim and noting that "[h]ere, there cannot be a traditional dilution claim because Defendants' marks are not similar to the Plaintiffs' marks"); *Hensley Mfg, Inc. v. ProPride, Inc.* 622 F. Supp. 2d 554 (E.D. Mich. 2008), *aff'd* 579 F.3d 603 (6th Cir. 2009) (granting Rule 12(b)(6) motion to dismiss breach of contract claim which required in part an underlying claim of trademark dilution due to lack of similarity between Plaintiff's mark and the allegedly dilutive mark).

Similarly here, given the nature of the accused works at issue, Plaintiff did not and cannot set forth an actionable dilution claim. Accordingly, Plaintiff's Count V for trademark dilution should be dismissed with prejudice.

### F.     Sixth and Seventh Counts for State Law Claims

Plaintiff ignores the substance of Redbubble's primary argument to dismiss Plaintiff's Sixth and Seventh Counts, namely that Redbubble is immune from suit on Plaintiff's state law claims based on Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Instead, Plaintiff argues that it is premature to consider the merits of this defense in the context of a motion to dismiss. However, as with the trademark dilution claim, Plaintiff's own Complaint establishes the validity of this legal defense as a matter of law.

More specifically, as noted in Redbubble's motion, "a defendant is entitled to § 230 protection as long as (1) it is a provider or user of an 'interactive computer service,' (2) the asserted claims 'treat the defendant as a publisher or speaker of information,' and (3) the challenged communication is 'information provided by another content provider.'" *Free Kick Master LLC v. Apple Inc.*, 140 F.3d 975 (N.D. Cal. 2015) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1037 (9th Cir. 2003)).

By admitting at Paragraph 23 of the Complaint (among other places) that the Redbubble

platform allows multiple users to "upload images to Redbubble's website," Plaintiff established that Redbubble meets the first prong of the CDA immunity test. 47 U.S.C. § 230(f)(2) (An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server").

By alleging at Paragraphs 71 and 76 that Redbubble "passed off goods as those of another," "represented" various matters, and "disparaged the goods, services, or business of Plaintiff," Plaintiff establishes that Redbubble meets the second prong of the test. *See Perfect 10, Inc. v. Ccbill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (finding Section 230 covered state law claims of violation of right of publicity, unfair competition, and false and misleading advertising, and noting that state law claims for trademark infringement and dilution and trade defamation would also be covered).

And by alleging at Paragraphs 23 and 27 that third-party sellers "upload images" or "upload designs" for the accused products to Redbubble.com, Plaintiff establishes that Redbubble meets the third prong for Section 230 immunity, which requires that the challenged communication be "information provided by another content provider." *See Free Kick Master, supra* (quoting *Carafano v. Metrosplash, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2001) ("So long as a third-party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the editing or selection process"). Thus, there is no question that Redbubble can establish this defense; it has already been established by Plaintiff's own admissions.

Plaintiff seeks to avoid these admissions by arguing that the CDA does not apply to its state law deceptive trade practices and trademark-based claims, relying exclusively on the district court's opinion in *Skreened*. However, *Skreened* did not involve the claims at issue here;

23

Judge Frost's CDA analysis applied to claims of federal trademark infringement and state law right of publicity.[7] *See Perfect 10, supra* (while Section 230(e)(2) contains an exemption for claims under "any law pertaining to intellectual property," this exemption applies solely to federal intellectual property claims, not state claims). In fact, courts have consistently applied the CDA to state law unfair competition and trademark-based claims like those at issue here. *Perfect 10, supra* (applying CDA immunity to state law unfair competition and false advertising claims); *Free Kick Master, supra* (dismissing state law trademark infringement, false advertising and unfair business practice claims based on the CDA with prejudice); *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 939-40 (S.D. Cal. 2013) (dismissing state law trademark infringement, unfair and deceptive practices and trademark dilution claims without leave to amend under Section 230 of the CDA). Thus, Plaintiff's assertion that the CDA does not apply to these state law claims is without merit.

Finally, as Plaintiff concedes at page 21, "the same [pleading] analysis applies to federal trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes." (Doc. #21, at 21). Accordingly, these claims fail for the same reasons as Plaintiffs' First and Fourth Counts under the Lanham Act.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint against Redbubble for lack of personal jurisdiction. In the alternative, the Court should dismiss each of Plaintiff's claims for failure to state a claim.

---

[7] *Skreened* is also distinguishable on other grounds, both because the defendants in *Skreened* were held to have waived the defense because it was not alleged in their Answer, and because as discussed in more detail earlier in this Reply, the defendants were themselves the printers and sellers of the accused products, not merely a service provider like Redbubble.

CO\5442322.1

Dated: November 28, 2016

Respectfully submitted,

*s/ John P. Gilligan*
John P. Gilligan (0024542)
TRIAL ATTORNEY
ICE MILLER LLP
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-2700
Facsimile: (614) 462-5135
Email: john.gilligan@icemiller.com

*Counsel for Defendant Redbubble Inc.*

OF COUNSEL:

Mary F. Geswein (0063361)
ICE MILLER LLP
250 West Street
Columbus, Ohio 43215
Telephone: (614) 462-5038
Facsimile: (614) 222-3436
Email: mimi.geswein@icemiller.com

Kenneth B. Wilson (*pending admission pro hac vice*)
COASTSIDE LEGAL
455 1st Avenue
Half Moon Bay, CA 94019
Telephone: (650) 440-4211
Email: ken@coastsidelegal.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 28, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

*s/ John P. Gilligan*
John P. Gilligan

CO\5442322.1